UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENNETH LOWMAN,

          Plaintiff,

v.

GENERAL MOTORS CORP.,

          Defendant.
_____/

Civil Action No. 20-12515

Nancy G. Edmunds
United States District Judge

Elizabeth A. Stafford
United States Magistrate Judge

David R. Grand
United States Magistrate Judge (Settlement)

## REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION TO ENFORCE SETTLEMENT (ECF No. 13) AND DENY PLAINTIFF'S MOTION TO REINSTATE CASE AND OPPOSING SETTLEMENT (ECF No. 24)

Before the Court are two related motions: (1) Defendant General Motors Corporation's ("GM") Motion to Enforce Settlement (ECF No. 13), and (2) Plaintiff Kenneth Lowman's ("Lowman") Motion to Reinstate Case and Opposing Settlement (ECF No. 24). Both motions are fully briefed (ECF Nos. 23, 25, 32, 33) and have been referred to this Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) (ECF Nos. 14, 26). Oral argument was held on both motions on August 16, 2021.

**I.  RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that GM's Motion to Enforce Settlement **(ECF No. 13)** be **GRANTED** and Lowman's Motion to Reinstate Case and Opposing Settlement **(ECF No. 24)** be **DENIED**.

**II.  REPORT**

    **A.  Background**

On July 22, 2020, Lowman filed his complaint in the Wayne County Circuit Court against

GM, contending that he had ceased working for GM on April 28, 2015; had executed a document on or about December 2, 2016, seeking retirement benefits under the GM pension plan for hourly employees (the "Plan"); and that his retirement benefits under the Plan were denied. (ECF No. 1, PageID.12-13). On September 14, 2020, GM removed Lowman's complaint to the United States District Court for the Eastern District of Michigan based on the fact that his claim for retirement benefits under the Plan was governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"). (*Id.*, PageID.1-5).

        1.     *The October 2020 Settlement Offer*

On October 19, 2020, in an attempt to settle Lowman's instant lawsuit, GM (through its counsel) made a settlement offer to Lowman that was, for all intents and purposes, the same as a Mutually Satisfactory Retirement settlement proposal GM had previously offered to resolve a grievance filed by Lowman challenging his May 6, 2015 termination for attendance violations (the "Grievance Settlement"). (ECF No. 13-1, PageID.62-63). As part of the settlement offer communicated to Lowman's counsel on October 19, 2020, GM explained that the Grievance Settlement was never completed because Lowman had refused to sign the settlement agreement ("Grievance Settlement Agreement") and complete an additional form that was needed to process his retirement benefits.[1] (*Id.*, PageID.63). The settlement offer communicated to Lowman's attorney on October 19, 2020, included the same terms that had been included in the prior Grievance Settlement, including that Lowman would be retroactively reinstated as an employee and placed on a disciplinary layoff as of December 5, 2016, and Lowman would be allowed to retire under the Mutually Satisfactory Retirement provisions of the Plan, retroactive to January 1,

---

[1] Lowman did sign one necessary form on December 7, 2016, which was the Application for a Mutually Satisfactory Retirement (the "Application for MSR"). (ECF No. 13-1, PageID.63; ECF No. 13-4).

2

2017, as set forth in the Application for MSR, which Lowman previously had signed on December 7, 2016. (ECF No. 13-5). It also contained a confidentiality provision. (*Id.*, PageID.81).

According to counsel for GM, she confirmed in a phone call to Lowman's attorney on October 22, 2020, that Lowman was agreeable to settling the lawsuit for the offer made on October 19, 2020.[2] (ECF No. 13-1, PageID.64). Thus, on November 24, 2020, a Confidential Negotiated Settlement Agreement and General Release was sent to Lowman's attorney to resolve this lawsuit under the terms of the October 19, 2020 settlement offer. (ECF No. 13-5). Specifically, the Settlement Agreement included the fact that Lowman would be allowed to retire retroactive to January 1, 2017, under the previously offered Mutually Satisfactory Retirement. To ensure that the terms from the prior Grievance Settlement were incorporated into the new Settlement Agreement, the original Application for MSR signed by Lowman on December 7, 2016, was included as an exhibit to the Settlement Agreement. (*Id.*, PageID.84).

Despite the representations allegedly made by Lowman's attorney during the October 22, 2020 telephone call – namely, that Lowman was agreeable to settling the case on the terms proposed – Lowman refused to sign the Settlement Agreement. (ECF No. 13-1, PageID.64). According to counsel for GM, during subsequent discussions with Lowman's attorney, she was provided with only one reason for Lowman's refusal to sign the Settlement Agreement: Lowman did not want to pay attorney's fees he owed to his own attorney out of the settlement. (*Id.*, PageID.65).

---

[2] Although Lowman disputes the fact that he agreed to the settlement proposed on October 19, 2020 (ECF No. 23, PageID.161), GM filed a Notice of Settlement on October 22, 2020, indicating that the parties had reached a tentative settlement of this matter and anticipated filing a Stipulated Order of Dismissal within 45 days (ECF No. 7). Notably, Lowman's attorney did not object to this filing. Regardless, Lowman's repeated arguments that he did not agree to the October 2020 settlement proposal at the time are irrelevant to the issues raised in the instant motions, as the case proceeded and GM is contending that it eventually settled on April 9, 2021.

### 2. The March and April 2021 Settlement Negotiations

On February 17, 2021, a status conference was held before the Honorable Nancy G. Edmunds, during which the parties advised the Court that they had not been able to reach a resolution of this matter. Consequently, Judge Edmunds referred the matter to the undersigned to conduct a settlement conference. (ECF No. 9).

On March 26, 2021, a settlement conference was held via Zoom, at which time GM informed the undersigned, Lowman, and Lowman's attorney that GM would continue to honor its prior settlement offer, but it would not increase the settlement to include Lowman's attorney's fees. (ECF No. 13-1, PageID.65). During the settlement conference, Lowman requested a rough estimate of the retirement benefits that would be paid retroactive to January 1, 2017. (*Id.*). Because the actual retroactive payment amount would vary depending on the date it was issued, as well as other retirement elections that Lowman had not yet selected, GM was unable to determine an exact retroactive payment amount during the settlement conference. (*Id.*). Thus, to allow time to calculate the exact amount of the payment, the undersigned adjourned the settlement conference and scheduled it to resume on April 9, 2021. (*Id.*).

On April 1, 2021, counsel for GM emailed Lowman's attorney with a detailed calculation of the retroactive retirement benefits that would be paid, along with an explanation of all assumptions used for the calculation, including the date the retroactive retirement benefit payment would be issued. (ECF No. 13-6). Based on GM's calculation, Lowman was informed that the settlement would provide him with an approximate lump sum payment of $127,000, followed by retirement payments in the amount of $1,264.77 each month. (*Id.*, PageID.87-88). Given the reason for Lowman's prior refusal to sign the Settlement Agreement, GM stressed in its April 1, 2021 email that it was waiving its claim for attorney's fees pursuant to ERISA, but it would not

contribute any amounts toward Lowman's attorney's fees as part of the settlement. (*Id.*, PageID.87). GM further stressed that Lowman would not be eligible for this Mutually Satisfactory Retirement retroactive to January 1, 2017, unless he completed the settlement. (*Id.*).

On April 9, 2021, the second day of the settlement conference conducted by the undersigned via Zoom, Lowman unequivocally agreed to the terms of the Settlement Agreement, including the fact that he would receive a lump sum payment for all retroactive benefits from January 1, 2017 (which would be roughly $127,000, depending on the date the retroactive benefit check was issued and Lowman's final selection of any options available to him as part of the Mutually Satisfactory Retirement package), and thereafter Lowman would receive a monthly retirement benefit estimated to be $1,264.77 per month, again depending on Lowman's final selection of retirement options. (ECF No. 30, PageID.195-96). The following exchange occurred on the record memorializing Lowman's assent:

> THE COURT: So before we get into too many more questions or tangents, let me ask, Mr. Lowman, did you hear everything that [GM's attorney] said about the, you know, the terms and the amount of money that you'll be receiving both as a lump sum, and as a monthly amount, moving forward, did you hear and understand all of that?
>
> THE PLAINTIFF: Yes.
>
> THE COURT: All right. And you agree to all of those terms, correct?
>
> THE PLAINTIFF: Yes.
>
> THE COURT: All right. And, you know, as [GM's attorney] said, those numbers are based on an assumption that you, you know, fill out the forms, you know, timely and that you check, you know, the box that she indicated, the single life annuity. And you understand that if you, you know, either delay or, you know, make a different election, that that could change the amounts. But, but we're still – you're still agreeing you, you know, this framework for settling this case. You understand all of that?
>
> THE PLAINTIFF: Yes.

(*Id.*, PageID.197). Thus, the undersigned asked Lowman on the record if he understood the terms

5

of the settlement and was agreeing to them, to which Lowman answered in the affirmative.[3] That same day, the Court issued a minute entry confirming that a settlement had been reached, and the parties were instructed to file a stipulated order of dismissal within 30 days. (4/9/21 Text-Only Minute Entry). Neither party contacted the Court with any concerns about this docket entry.

On April 19, 2021, counsel for GM provided to Lowman's attorney documentation explaining to Lowman the selections he needed to make to finalize his Mutually Satisfactory Retirement, as well as another copy of the Confidential Negotiated Settlement Agreement and General Release.[4] (ECF No. 13-7). Lowman, however, refused to sign the Settlement Agreement or any other required forms; according to counsel for GM, the only explanation given for such refusal was that Lowman did not want to pay his own attorney's fees. (ECF No. 13-1, PageID.68).

As a result, on June 4, 2021, GM filed the instant Motion to Enforce Settlement. (ECF No. 13). On June 24, 2021, Lowman filed a Motion to Reinstate Case and Opposing Settlement. (ECF No. 24). The next day, Lowman's attorney – who has since withdrawn as counsel in this case – filed a response to GM's motion, opposing the remedy requested but stating as follows:

> Plaintiff's Counsel concurs with Defendant Counsel's assessment of the current status of the matter. Both Plaintiff's Counsel and Defendant's Counsel have worked tirelessly on this matter, including Defendant's Counsel having immediately provided upon request, the amounts the Plaintiff would be entitled too [sic] relative to his retirement funds. As indicated by Defendant's Counsel, Plaintiff's Counsel must oppose this motion.

(ECF No. 25, PageID.176). On July 7, 2021, GM filed a response to Lowman's motion to reopen

---

[3] Indeed, counsel for Lowman indicated that, during the settlement conference, Lowman "was thoroughly informed of the risk of proceeding with the filing of a Wilkins brief, should the matter continue. It was after being advised of this and the rejection of Plaintiff's counteroffer, that Plaintiff accepted the offer made by Defendant's Counsel." (ECF No. 25, PageID.181).

[4] The only changes made to the Settlement Agreement since the last agreement had been sent were an updated signature date and confirmation that the retroactive retirement payment would be sent to Lowman's attorney's office, as directed by Lowman's attorney. (ECF No. 13-7).

the case, as well as a reply brief in support of its own motion to enforce the settlement. (ECF Nos. 32, 33). Thus, both motions are fully briefed, and the only issue to be decided by the Court is whether the April 9, 2021 settlement should be enforced.

### B. Legal Standard

The legal standard governing the relief sought by GM is clear:

> It is well established that courts retain the inherent power to enforce agreements entered into in settlement of litigation pending before them. A federal court possesses this power even if that agreement has not been reduced to writing. Before enforcing settlement, the district court must conclude that agreement has been reached on all material terms. The court must enforce the settlement as agreed to by the parties and is not permitted to alter the terms of the agreement.

*Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir. 1988) (citations and internal quotation marks omitted); *see also RE/MAX Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 646 (6th Cir. 2001) ("The existence of a valid agreement is not diminished by the fact that the parties have yet to memorialize the agreement. When parties have agreed on the essential terms of a settlement, and all that remains is to memorialize the agreement in writing, the parties are bound by the terms of the oral agreement.").

Settlement agreements, as a type of contract, are governed by the principles of contract law. *See Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992); *see also Echols v. Nimmo*, 586 F. Supp. 467, 469 (W.D. Mich. 1984) ("Where there is a dispute as to the existence of a settlement agreement, general contract principles govern."). Under Michigan law, settlement agreements are governed by legal principles applicable to the construction and interpretation of contracts. *See Walbridge Aldinger Co. v. Walcon Corp.*, 207 Mich. App. 566, 571 (1994). Contract principles dictate that a settlement agreement binds parties, absent a showing of mistake, fraud, or unconscionable advantage. *See Plamondon v. Plamondon*, 230 Mich. App. 54, 56 (1998).

In *Eerdmans v. Maki*, 226 Mich. App. 360 (1997), the Court of Appeals briefly summarized Michigan's contract law principles:

> A valid contract requires mutual assent on all essential terms. Mere discussions and negotiation cannot be a substitute for the formal requirements of a contract. Before a contract can be completed, there must be an offer and acceptance. An offer is defined as "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." Acceptance must be unambiguous and in strict conformance with the offer.

*Id.* at 364 (citations and internal quotations omitted). Michigan court rules provide that a settlement agreement between the parties is not binding unless "it was made in open court, or unless evidence of the agreement is in writing, subscribed by the party against whom the agreement is offered or by that party's attorney." M.C.R. 2.507.

The parties must have a meeting of the minds on all essential terms in the contract. *See Kloian v. Domino's Pizza L.L.C.*, 273 Mich. App. 449, 453 (2006). "'A meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind.'" *Kamalnath v. Mercy Mem. Hosp. Corp.*, 194 Mich. App. 543, 548 (1992) (quoting *Stanton v. Dachille*, 186 Mich. App. 247, 256 (1990)). Settlements fairly made on the record should not be upset because of any subjective hesitation or secret reservation on the part of either party. *See Meyer v. Rosenbaum*, 71 Mich. App. 388, 393 (1976). "[O]nly the existence of fraud or mutual mistake can justify reopening an otherwise valid settlement agreement." *Brown v. Cty. of Genesee*, 872 F.2d 169, 174 (6th Cir. 1989).

**C. Analysis**

In this case, as explained in detail above, there can be no dispute that the parties reached a settlement and agreed as to all material terms. Not only were those key terms put into a written confidential Settlement Agreement – a settlement agreement proposed to Lowman and/or his attorney on a prior occasion, such that they could not have been a surprise – but the key terms also

8

were read into the record during the second day of the settlement conference. In fact, the undersigned ensured that Lowman understood the terms of the agreement and was voluntarily agreeing to said terms by asking Lowman and receiving confirmation on the record of the same. (ECF No. 30, PageID.197).

Lowman argues, however, that the terms of the settlement should not be enforced because he "settled the case based on several factors[,]" including:

> "1. Erroneous pressure
>
> 2. Opposing counsel misrepresented material of fact.
>
> 3. Plaintiff attorney stated several times the judge wants this case settled
>
> 4. Plaintiff attorney stated the judge said if you don't settle the case you not going to be happy with her decision.
>
> 5. Plaintiff say he was confused as Judge Grand informed the plaintiff to deal with pension issues first, then deal with the wrong next.
>
> 6. Nondisclosure of facts.
>
> 7. Plaintiff states Judge Grand informed attorney Scanland and his client 'opposing counsel said they were not here to negotiate anything as the case had already been settled.'"

(ECF No. 23, PageID.161-62). Lowman further argues that, "A fair settlement is an agreement, but if it's tainted by misrepresentation, opposing parties withholding documents that would have had a different impact on a decision, nondisclosure of facts, undue influence, etc it's not a fair agreement." (ECF No. 24, PageID.170).

It appears, then, that Lowman is arguing that he only agreed to settle because he was pressured by his own attorney and the undersigned, who allegedly indicated that "opposing counsel said they were not here to negotiate anything as the case had already been settled." (ECF No. 23, PageID.161-62). Apparently, then, Lowman is contending that he erroneously believed the matter

9

was already resolved and, thus, had no choice but to agree to the settlement.

There are at least three problems with Lowman's argument. First, the fact that the parties appeared before the undersigned for a second settlement conference on April 9, 2021, belies Lowman's assertion that, at that time, he believed "the case had already been settled." Indeed, as the Court explained at the hearing on these motions, if the case had already been settled, there would have been no need for a second settlement conference. (ECF No. 37, PageID.250-51). Second, a review of that hearing's transcript confirms that Lowman's argument is based on a mischaracterization of the settlement discussions, and that his real dissatisfaction is with his attorney:

> THE COURT: Wait a second. Let me stop you. Because you're doing just fine now. And I remember you participated in the settlement conference. We talked with your attorney in the breakout room. And that's exactly, Mr. Lowman, why I asked you those questions. I gave you an opportunity at that settlement conference to say, no, Judge Grand. I disagree. I do not accept this. Or no, Judge Grand, I have questions about this proceeding today. Or I'm not comfortable or any of those things. And you didn't say any of those things. I asked you if you accepted the terms and you, as I just read from the transcript, said yes.
>
> MR. LOWMAN: I would have thought that my attorney who was representing me would have spoke on my behalf. I've never had to come in front of a judge and Ms. Bengs in this manner to where behind the attorney I'm expecting him to represent him. I don't know law. Now I'm only back by looking at all the documents and stuff that I was able to retrieve and not get from Ms. Bengs or not get any information from my attorney. I'm just at a loss. That's all I can tell you. I put my trust in him. And that's what I did, you know. I mean, I got documents where he's saying one thing and the emails is saying something totally different. But I mean I'm trusting him. You know, I just want to come in front of the judge -- Judge Grand when you made the statement when we was in the chat room, the opposing counsel said they not here to negotiate anything, the case is already settled. So I'm thinking it's settled. I mean, I'm looking at a judge. I'm not looking at a person in the street. So hearing that from you, ***you didn't say that it was settled per se, but you said what they said.***
>
> THE COURT: Right. So let me stop you. What I said, just to clarify, is that General Motors' position was always that it had been settled. And that they were -- you were wanting to get additional compensation or additional

10

> relief. And I was telling you that I raised that request with General Motors and that they were unwilling to budge from what they had said was the original settlement. And so I went back to you with Mr. Scanland and said this is the best that I can do because General Motors is not willing to sweeten the agreement at all above what General Motors previously said had been agreed to. Then it was up to you to either say okay to that or no to that. And then you with your attorney said okay and then we went on the record and that's why I confirmed on the record that you were okay with those terms.
>
> And so I still am just -- maybe you're saying that you're dissatisfied with your attorney or something like that. But I don't hear you saying that you did not agree to what General Motors was offering and what I asked you about.
>
> MR. LOWMAN: Like I said, I put my trust in my attorney. And when they said the case was already settled, I just thought it was already settled because he never raised any argument. He never produced anything. Nobody even produced any records to indicate anything about this case. I don't even -- I can't say what you don't have. But I don't believe my attorney presented anything to you to support my claim. I'm just -- everything that went on with this case really it's all about me. But it's the attorney, opposing counsel, and you that I stand in front of. Because he didn't have my best interest because he didn't do what I asked him to do.

(ECF No. 37, PageID.247-49) (emphasis added). The issue Lowman raises may reflect a dispute between he and his attorney, but it doesn't change the fact that, **as between he and GM**, Lowman unequivocally agreed on the record to the settlement. As explained above, any "subjective hesitation or secret reservation" by Lowman is not a basis to deprive GM of the benefit of the bargain it reached with him. *See Meyer*, 71 Mich. App. at 393. Third, Lowman has not presented any evidence of fraud on the part of GM or of mutual mistake, which would be required to justify not enforcing an otherwise valid settlement agreement. *See Brown*, 872 F.2d at 174.

In sum, here, there was an unambiguous offer and acceptance of the proposed settlement. The terms of the settlement were placed on the record, and Lowman indicated his understanding of and voluntary agreement to such terms. Looking at the express words of the parties and their visible acts, as the Court is required to do, *see Kamalnath*, 194 Mich. App. at 548, the Court finds

11

that there was a meeting of the minds as to the terms of the settlement, and the fact that it appears that Lowman was still subjectively hoping that he would not have to pay his own attorney's fees, or that he had some other beef with his attorney,[5] is insufficient to undo the settlement that was fairly made and put on the record. See M.C.R. 2.507.

Since the parties agreed on all material terms,[6] they are obligated to perform those terms. Thus, Lowman should be required to execute the Settlement Agreement and any other required paperwork to complete the settlement that was reached, and GM should be required to adhere to all of its obligations under that settlement.[7]

### III. CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that GM's Motion to Enforce Settlement **(ECF No. 13)** be **GRANTED** and Lowman's Motion to Reinstate Case and Opposing Settlement **(ECF No. 24)** be **DENIED**.

---

[5] The Court notes that prior to his withdrawal as Lowman's counsel, attorney Jerard M. Scanland filed a Notice of Attorney's Charging Lien. (ECF No. 15). In that Notice, attorney Scanland advises that pursuant to a contingent fee agreement between he and Lowman, he has a "substantial interest" in the settlement proceeds to be paid by GM in connection with the settlement of this case. (ECF No. 15).

[6] At oral argument on the instant motions, Lowman asserted that he "never agreed to any confidential settlement agreement" and claimed he "never [had] seen a confidential agreement" until after April 9, 2021. (ECF No. 37, PageID.254). As set forth above, however, the settlement proposed to Lowman in October 2020 – and apparently accepted by his attorney – contained a confidentiality provision, something that the Court did not fully appreciate at the time of oral argument. (ECF No. 13-5; ECF No. 37, PageID.264). Thus, Lowman's *post hoc* assertion that he was not aware of the importance of this confidentiality provision to GM, and did not understand that he was agreeing to such a term, is not persuasive.

[7] At the very end of its reply brief, GM requests – for the first time – that the Court "award any other necessary relief including an award of attorney fees in favor of GM for fees incurred in pursuing enforcement of the settlement agreed upon by Plaintiff." (ECF No. 32, PageID.218). Because this request was not made in GM's principal brief, and because Lowman is now proceeding *pro se*, the Court declines to award such relief.

| | |
|---|---|
| Dated: November 19, 2021<br>Ann Arbor, Michigan | s/David R. Grand<br>DAVID R. GRAND<br>United States Magistrate Judge |

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.  A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 19, 2021.

s/Eddrey O. Butts<br>
EDDREY O. BUTTS<br>
Case Manager
